```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE            :
COMPANY, GEICO INDEMNITY COMPANY,         :
GEICO GENERAL INSURANCE COMPANY, and      :
GEICO CASUALTY COMPANY,                   :    REPORT AND
                                          :    RECOMMENDATION
                         Plaintiffs,      :
                                          :    22-CV-79 (LDH)(MMH)
          -against-                       :
                                          :
ALP SUPPLY, INC.; PV SUPPLY, INC.; and PAL :
VAKULA,                                   :
                                          :
                         Defendants.      :
------------------------------------------------------------------x
```

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs") sued Defendants ALP Supply, Inc. ("ALP"), PV Supply, Inc. ("PV"), and Pal Vakula, alleging common law fraud and unjust enrichment claims. (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (*See generally* Mot., ECF No. 21.)[2] The Honorable LaShann DeArcy Hall referred the motion for report and recommendation. For the reasons set forth

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] The Motion includes Plaintiffs' memorandum of law (ECF No. 21-1) ("Pls.' Mem."); Declaration of Philip Nash (ECF Nos. 21-2) ("Nash Decl."); a proposed judgment (ECF No. 21-3); Declaration of Kathleen Asmus and its four exhibits (ECF No. 21-4) ("Asmus Decl."); report pursuant to the Servicemembers Civil Relief Act (ECF No. 21-5); certificates of default (ECF No. 21-6); the Complaint (ECF No. 21-7); and details regarding collections actions filed against Plaintiffs by Defendants in state court (ECF No. 21-8). The supplemental materials include a supplemental declaration from Philip Nash (ECF No. 26) ("Supp. Nash Decl.").

below, the Court respectfully recommends that Plaintiffs' motion should be **granted** as to their common law fraud claims and **denied** as to their unjust enrichment claims. The Court further respectfully recommends that Plaintiffs should be awarded damages as set forth herein.

I.  BACKGROUND

A.  Factual Allegations

The Complaint alleges the following facts, which are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015). In sum, the allegations focus on Defendants' multi-faceted scheme to defraud GEICO by falsely representing material information to collect benefits under New York's "no-fault" insurance laws.

1.  New York's No Fault Insurance Laws

In New York, car insurers are required to provide personal injury benefits (*i.e.*, "no-fault benefits") to individuals who claimed to have been involved in automobile accidents in New York and were eligible for coverage under no-fault insurance policies issued by GEICO ("Insureds"). (Compl., ECF No. 1 ¶¶ 3, 20.) Claims for no-fault benefits are governed by a specific fee schedule and can result in up to $50,000 per Insured for medically necessary expenses. (*See id.* ¶¶ 21–22 (citing N.Y. Ins. Law § 5102(a).) Healthcare service providers that do not comply with state or city licensing requirements are ineligible to collect no-fault benefits. (Compl., ECF No. 1 ¶¶ 25–28.) Further, the relevant laws prohibit licensed providers from paying or accepting kickbacks for referrals. (*See id.* ¶ 31 (citing N.Y. Educ. Law §§ 6509-a, 6530(18), 6531; 8 N.Y.C.R.R. § 29.1(b)(3).)

2

No-fault benefits can be used to reimburse medically necessary durable medical equipment ("DME") and orthotic devices ("OD")³ provided pursuant to a lawful prescription from a licensed provider. (*See* Compl., ECF No. 1 ¶ 37 (citing N.Y. Ins. Law § 5102(a).)) Payments for DME or OD are directly related to the fee schedule set forth by the New York State Medicaid Program. (Compl., ECF No. 1 ¶¶ 43–46.) If a specific DME or OD does not have a fee listed in the Medicaid fee schedule, then insurers must pay healthcare service providers a percentage of the provider's cost to acquire the DME or OD or the usual and customary cost of the DME or OD charged to the public. (*Id.* ¶ 48.)

### 2. The Alleged Fraudulent Scheme

In this action, Plaintiffs are Nebraska corporations with their principal places of business in Maryland and are authorized to conduct business and underwrite automobile insurance in New York. (*Id.* ¶¶ 12, 18.) ALP and PV, both New York corporations based in Brooklyn, are retailers of DME and OD and were incorporated in July 2019. (*Id.* ¶¶ 1–2). Vakula, a New York resident, owns and operates both businesses, but is not and has never been a licensed healthcare provider. (*Id.* ¶¶ 13–15.)

Beginning in or about July 2019, Vakula used ALP and PV to submit and cause to be submitted to GEICO thousands of fraudulent no-fault insurance claims for medically unnecessary, illusory, and otherwise non-reimbursable DME and OD. (*See id.* ¶¶ 1, 53.)

---

³ DME includes items that individuals use for medical purposes in their homes, such as bed boards, cervical pillows, orthopedic mattresses, electronic muscle stimulator units ("EMS units"), infrared heat lamps, lumbar cushions, orthopedic car seats, transcutaneous electrical nerve stimulators ("TENS units"), electrical moist heating pads (known as thermophores), cervical traction units, and whirlpool baths. (Compl., ECF No. 1 ¶ 38.) OD includes cervical collars, lumbar-sacral supports, orthopedic pillows, and similar products used to improve joint, spine, or limb movement or to align or correct deformities. (*Id.* ¶ 39.)

3

Specifically, Defendants failed to comply with local licensing requirements when Vakula listed false operating addresses on the license application forms, making ALP and PV ineligible to sell DME and/or OD and to collect no-fault benefits related to same. (*See id.* ¶¶ 84–106.) Defendants also maintained illegal financial arrangements with unidentified third parties to which Defendants paid thousands of dollars in kickbacks to obtain prescriptions for DME and/or OD issued by referring providers. (*Id.* ¶¶ 109–21.) Pursuant to a prearranged protocol, providers prescribed medically unnecessary DME and/or OD to Insureds, sometimes without a provider actually examining or treating the Insured; the providers then gave the prescriptions to Defendants to fill. (*Id.* ¶¶ 136, 146–47.) Additionally, Defendants improperly fulfilled vague or generic prescriptions by choosing specific DME and/or OD for Insureds that had high reimbursement rates according to the Medicaid fee schedule. (*Id.* ¶¶ 220–31.) Defendants also submitted bills to GEICO for DME and/or OD that was never actually provided to Insureds or bills that misrepresented the equipment that was provided. (*Id.* ¶¶ 252–70, 324.)

GEICO, in turn, relied on this false information to process Defendants' claims promptly pursuant to statutory and contractual obligations, resulting in payments of over $267,000. (*Id.* ¶ 334.) Defendants not only submitted claims to GEICO knowing that they included materially false information but also hired law firms to pursue collection of the fraudulent claims from GEICO, which resulted in expensive and time-consuming litigation against GEICO if the charges were not promptly paid in full. (*Id.* ¶ 333.)

## B. Procedural History

GEICO initiated this action in January 2022. (Compl., ECF No. 1.) Subsequently, GEICO served Defendants with process, including alternate service for Vakula on Denis

Korsunskiy, Esq., who represents ALP and PV in their state court collections actions against GEICO. (*See* ECF Nos. 9–10, 16.) After Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered certificates of default against them. (ECF Nos. 13–14, 18.)

GEICO initially moved for default judgment in August 2022, seeking compensatory damages, prejudgment interest, and a declaratory judgment. (ECF No. 18.) Judge DeArcy Hall referred the motion for report and recommendation. (Aug. 9, 2022 Order.) GEICO later withdrew the motion without prejudice after the Court questioned its failure to comply with the Local Civil Rules' requirements for default judgment motions. (Feb. 3, 2023 Order to Show Cause; ECF No. 20.)

GEICO filed its second motion for default judgment in February 2023, seeking the same relief as the first motion. (Mot., ECF No. 21.) At a hearing on the motion, Korsunskiy confirmed that he does not represent Defendants in this action and does not intend to oppose the motion on behalf of Defendants. (July 26, 2023 Tr., ECF No. 27 at 27:5-10.) In response to the Court's directive, GEICO filed supplemental materials related to damages. (Supp. Nash Decl., ECF No. 26.)

To date, Defendants still have not appeared in this case or responded to Plaintiffs' motion.

## II. STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). First, when a plaintiff shows, such as by affidavit, that a defendant

5

has "failed to plead or otherwise" defend against an action, the Clerk of Court shall enter a default. Fed. R. Civ. P. 55(a). Second, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). A court may enter default judgment if the plaintiff establishes liability as a matter of law when the factual allegations of the complaint are taken as true. *Bricklayers*, 779 F.3d at 187.

### III.   JURISDICTION AND VENUE

#### A.   Subject Matter Jurisdiction

The Court has original jurisdiction over this action because the amount in controversy exceeds $75,000 and this action is between citizens of different states. 28 U.S.C § 1332(a)(1). A corporation is deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Plaintiffs are incorporated in Nebraska with their principal places of business in Maryland. (Compl., ECF No. 1 ¶ 12.) ALP and PV both have their places of incorporation and principal places of business in New York. (*Id.* ¶¶ 13–14.) Further, Vakula is a resident and citizen of New York. (*Id.* ¶ 15.) Finally, Plaintiffs seek compensatory damages that exceed $75,000. (*Id.* at 87 ¶ B.) Thus, GEICO satisfies the requirements for subject matter jurisdiction.

### B.     Service of Process

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG)(RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (cleaned up).

Here, the Court has personal jurisdiction over Defendants. First, GEICO properly served ALP and PV with process by delivering copies of the Summons and Complaint to the New York Secretary of State. (ECF Nos. 9–10); Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. Ltd. Liab. L. § 303(a)(1); N.Y. C.P.L.R. § 311-a(a)(iii). Second, GEICO properly served Vakula after the Court granted its request for alternate service on Vakula. (ECF No. 15; Apr. 20, 2022 Order; ECF No. 16.)

### C.     Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(a)(1). A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." 28 U.S.C. § 1391(d). As alleged, ALP and PV are New York corporations with principal places of business in New York; therefore, venue in New York is proper for these defendants. *Id.* Venue is also proper for Vakula because he resides in New York and is the owner of and controls ALP and PV. 28 U.S.C § 1391(a)(1).

7

## IV. DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful."). Because Defendants were properly served, their conduct demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). As noted, Defendants have failed to answer or provide any defense to GEICO's claims. Accordingly, a default is warranted.

Third, Plaintiffs will be prejudiced if the motion for default judgment is denied because they have "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, "[w]ithout the entry of a default judgment, [GEICO] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (first alteration in original) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)). Based on the foregoing, entry of default judgment is permissible. The Court now turns to the issue of liability.

## V.    LIABILITY

### A.    Joint and Several Liability

GEICO seek to hold ALP and Vakula jointly and severally liable and PV and Vakula jointly and severally liable. (Pls.' Mem., ECF No. 21-1 at 26–27.) New York law provides that a court must hold defendants jointly and severally liable for all harm resulting from their conduct where defendants acted jointly and/or concurrently to produce a single injury. *E.g.*, *Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB)(RER), 2022 WL 772737, at *10 (E.D.N.Y. Feb. 23, 2022), *adopted by* 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022); *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, No. 19-CV-4414 (KAM)(RLM), 2022 WL 17774929, at *12 (E.D.N.Y. June 24, 2022), *adopted* (E.D.N.Y. Aug 1, 2022). "[A]n injury is divisible for the purposes of determining joint and several liability where there has been a clear allocation of fault between each defaulting defendant." *Elmwood*, 2022 WL 772737, at *10 (quotation marks omitted) (collecting cases).

9

Here, GEICO sufficiently alleges Vakula's joint and several liability as to PV and ALP. According to the Complaint, Vakula owns and controls both PV and ALP and was directly involved in submitting fraudulent claims to GEICO through those entities. (*See* Compl., ECF No. 1 ¶¶ 15, 53–54, 56–60, 346–52, 359–65.) The alleged harm to GEICO is indivisible between Vakula as the owner and operator of each corporate defendant. *Elmwood*, 2022 WL 772737, at *10; *Wellmart RX*, 2022 WL 17774929, at *12. Accordingly, the Court finds that joint and several liability is appropriate as to (1) ALP and Vakula and (2) PV and Vakula.

### B.    Common Law Fraud

In the Second and Fourth Causes of Action in the Complaint, GEICO alleges that Defendants committed common law fraud. (Compl., ECF No. 1 ¶¶ 346–52, 359–65; Pls.' Mem., ECF No. 21-1 at 19–25.) In this diversity action, the Court applies the substantive law of the state in which the district is located. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006).

Under New York law, a plaintiff asserting a claim of common law fraud must plausibly allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Additionally, in federal court, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As a result, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."

10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citation omitted).

### 1. Material Misrepresentations

Here, GEICO has sufficiently met the Rule 9(b) standard. *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK)(SJB), 2023 WL 2396099, at *6 (E.D.N.Y. Feb. 9, 2023) (collecting cases); *see also Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120 (DLI)(SJB), 2019 WL 1487576, at *5 (E.D.N.Y. Feb. 28, 2019), *adopted* (Mar. 31, 2019). Attached to the Complaint are exhibit charts that detail ALP and PV's claim submissions between October 21, 2019, and February 18, 2022, showing, *inter alia*, the relevant dates, the provider for each claim, product descriptions, and the amount of each claim. (Compl. Exs. 1 & 2, ECF Nos. 1-3, 1-4; Supp. Nash Decl. Exs. 1 & 2, ECF Nos. 26-1, 26-2.) GEICO alleges that each of the claims contained one or more fraudulent statements or omissions, including, *inter alia*, that: (1) ALP and PV were not lawfully licensed and therefore not eligible to receive no-fault benefits; (2) the prescriptions underlying the no-fault payments were the product of an illegal kickback scheme; and (3) unlicensed persons at ALP and PV processed vague prescriptions to match high-rate DME/OD fees. (*See, e.g.*, Compl., ECF No. 1 ¶¶ 4–11, 238–40, 268–93, 328, 333–34; Compl. Exs. 1 & 2, ECF Nos. 1-3, 1-4.)

### 2. Knowledge and Intent to Defraud

Despite Rule 9(b)'s particularity requirement, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (quoting Fed. R. Civ. P. 9(b)). A plaintiff must plead facts "that give rise to a strong inference of fraudulent intent." *Loreley Fin.*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)). "That inference

can be demonstrated either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Sulieman v. Igbara*, 599 F. Supp. 3d 113, 121 (E.D.N.Y. 2022) (cleaned up).

Here, GEICO's particularized allegations regarding Defendants' materially false statements, combined with the allegations of Vakula's knowledge regarding same, constitutes strong circumstantial evidence of Defendants' conscious misbehavior or recklessness. *Erlikh*, 2019 WL 1487576, at *6. For instance, Defendants purportedly submitted bills to GEICO with false reimbursement rates that indicated the items provided to insureds were expensive and high quality when they were, in reality, cheap and poor quality. (Compl., ECF No. 1 ¶¶ 77–79.) Additionally, GEICO alleges that Vakula provided false, nonexistent business addresses for ALP and PV to obtain dealer licenses to heighten the businesses' appearance of legitimacy. (*See* Compl., ECF No. 1 ¶¶ 84–108.) These facts, viewed in totality and in the light most favorable to GEICO, support the conclusion that Vakula knew the license was not legitimate, yet continued to submit claims for no-fault benefits. *Armengol*, 2022 WL 432320, at *6 (collecting cases); *Sulieman*, 599 F. Supp. 3d at 123–24. Thus, GEICO has alleged facts sufficient to raise an inference of Defendants' knowledge and intent to defraud.

### 3. Reasonable Reliance and Injury

Finally, with respect to reasonable reliance, GEICO sufficiently alleges that Defendants conveyed fraudulent statements or omissions on which GEICO reasonably and detrimentally relied. *See Pilkington North America, Inc. v. Mitsui Sumitomo Ins. Co.*, 420 F. Supp. 3d 123, 148 (S.D.N.Y. 2019). In particular, GEICO asserts that "[t]he facially valid documents submitted to GEICO . . . were designed to and did cause GEICO to rely upon them. As a

result, GEICO incurred damages of more than $267,000.00 based upon the fraudulent charges representing payments made by GEICO to the Supplier Defendants." (Compl., ECF No. 1 ¶ 334.) Plaintiffs' allegations that Defendants concealed their fraud and submitted "facially valid documents" in support of the fraudulent charges satisfy the requirement that Plaintiffs' reliance should be reasonable. *Erlikh*, 2019 WL 1487576, at *6–7. Therefore, GEICO has sufficiently alleged the elements for their common law fraud claims (Counts 2 and 4).

### C.     Unjust Enrichment

GEICO also raises allegations of unjust enrichment as the Third and Fifth Causes of Action in the Complaint. (Compl., ECF No. 1 ¶¶ 353–58, 366–71.) To establish an unjust enrichment claim under New York law, a plaintiff must show that "1) that the defendant benefitted; 2) at plaintiff's expense; and 3) that equity and good conscience require restitution." *Elmwood*, 2022 WL 772737, at *9 (quoting *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018)) (quotation marks omitted). An unjust enrichment claim is reserved for "unusual situations" when a defendant "has not breached a contract nor committed a recognized a tort," but when "circumstances create an equitable obligation running from the defendant to the plaintiff." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)).

In this case, finding liability on GEICO's unjust enrichment claims would be inappropriate because they are based on the same transactions and conduct as the common law fraud claims. *Elmwood*, 2022 WL 772737, at *9 (recommending denial of plaintiff's unjust enrichment claims because they were duplicative of the common law fraud claims); *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187 (PKC)(VMS), 2015 WL 5774459, at *16 (E.D.N.Y.

Sept. 30, 2015) (finding plaintiffs had not adequately pled unjust enrichment claims that rely on the same facts as their common law claims); *Erlikh*, 2019 WL 1487576, at *7–8 (same). GEICO refers to Defendants' "improper, unlawful, and unjust acts" as the basis for an unjust enrichment cause of action, but these "acts" clearly refer to Defendants' alleged conduct in executing the fraudulent no-fault billing scheme. (*Compare, e.g.*, Compl., ECF No. 1 ¶¶ 347–52 (fraud allegations against ALP and Vakula), *with id.* ¶¶ 354–58 (unjust enrichment claims against the same defendants).) Further, GEICO conceded at the motion hearing that the unjust enrichment claims arise out of the same transactions as the common law fraud claims. (Tr., ECF No. 27 at 7:8–24.) Therefore, the Court respectfully recommends that GEICO's motion should be denied with respect to the unjust enrichment claims in the Complaint (Counts 3 and 5).[4]

## VI. DAMAGES

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg., Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up). Here, GEICO seeks (1) compensatory damages of $112,201.74 from ALP and

---

[4] For the same reasons, the Court will not address any potential damages arising from liability on the unjust enrichment claims.

14

Vakula jointly and severally and $188,799.94 from PV and Vakula jointly and severally and (2) prejudgment interest.[5] (Nash Decl., ECF No. 21-2 ¶ 7.)

### A.   Compensatory Damages

"Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Erlikh*, 2019 WL 1487576, at *9 (cleaned up). A court may rely on detailed affidavits and documentary evidence to determine damages. *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834, at *7 (E.D.N.Y. Feb. 7, 2014) (citing *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Where a fraud claim is premised on the allegation that each bill that Defendants submitted contained a fraudulent statement or omission, the plaintiff is entitled to damages in the entire amount paid to the defendants. *Erlikh*, 2019 WL 1487576, at *9; *see also Elmwood*, 2022 WL 772737, at *10–11.

Here, GEICO alleges that Defendants submitted fraudulent bills by making false statements or omissions in each submission. (*See, e.g.*, Compl. ¶¶ 347–49, 360–62.) GEICO has submitted extensive charts of payments GEICO made to ALP and PV in connection with the Defendants' no-fault insurance reimbursement claims. (Asmus Decl., ECF No. 21-4 ¶¶ 4, 7–8, 11–12; Asmus Decl., ECF No. 21-4 at 9–18 (Ex 1 – ALP TIN Run), 26–37 (Ex 3 – PV

---

[5] In its memorandum of law in support of default judgment, GEICO requests, *inter alia*, "the costs and disbursements incurred in connection with the prosecution of this action," but offers no evidence to substantiate any requested costs. (*See* ECF No. 21-1 at 7; *see generally* ECF No. 21.) A plaintiff may recover "identifiable, out-of-pocket disbursements relating to filing fees, process servers, postage, and photocopying." *Ultra Dairy LLC v. Kondrat*, 514 F. Supp. 3d 452, 461 (N.D.N.Y. 2021). However, to recover costs, a plaintiff must provide records that document and itemize the requested costs. *MBC Ventures, LLC v. Miniventures of NY, Inc.*, No. 3:20-CV-762 (CSH), 2021 WL 3709808, at *16 (D. Conn. Aug. 20, 2021). Therefore, the Court respectfully recommends that GEICO's request for costs should be denied without prejudice.

TIN Run).) These records were generated using GEICO's "earnings reporting system," which generates mandatory tax reporting forms whenever GEICO issues payments to healthcare providers and tracks the payments using tax identification number or "TIN". (Asmus Decl., ECF No. 21-4 ¶ 4). Courts in this Circuit have found this method to be reliable in calculating fraud damages. *See, e.g.*, *Elmwood*, 2022 WL 772737, at *10; *Gov't Emps. Ins. Co. v. Spectrum Neurology*, No. 14-CV-5277 (ENV)(SMG), 2016 WL 11395017, at *6 (E.D.N.Y. Feb. 17, 2016), *adopted by* 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016). And, in this case, GEICO's charts reflect payments of $112,201.74 to ALP and $188,799.94 to PV. (Compl. Exs. 1 & 2, ECF Nos. 1-3, 1-4; Asmus Decl., ECF No. 21-4 ¶¶ 8, 12; *id.* at 9–18 (Ex 1 – ALP TIN Run), 26–37 (Ex 3 – PV TIN Run).) Accordingly, the Court respectfully recommends that GEICO should be awarded compensatory damages of $112,201.74 jointly and severally against ALP and Vakula and $188,799.94 jointly and severally against PV and Vakula.

### B. Prejudgment Interest

GEICO also seeks prejudgment interest at a rate of nine percent per year on the fraud damages. (Pls.' Mem., ECF No. 21-2 at 25–26; Nash Decl., ECF No. 21-2 ¶ 13.) In diversity cases, New York law governs the award of prejudgment interest. *Elmwood*, 2022 WL 772737, at *11 (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000)). New York law specifically mandates an award of prejudgment interest on fraud damages and typically requires the computation of interest "from the earliest ascertainable date the cause of action existed," such as, for insurance fraud, the date the insurance company makes payment. *Id.* (citing N.Y. C.P.L.R. §§ 5001(b), 5004). In this case, prejudgment interest should be awarded to GEICO at the rate of 9% per year.

In supplemental materials, GEICO provides detailed calculations of prejudgment interest. (Supp. Nash Decl. Exs. 1 & 2, ECF Nos. 26-1 (ALP) & 26-2 (PV).) Each chart identifies the relevant claim number, the amount paid to ALP or PV, the date when the check was issued, the check number, and the amount of prejudgment interest owed for each payment based on the total number of days between the date each check was issued through July 15, 2023, and based on the amount paid. (Supp. Nash Decl., ECF No. 26 ¶ 4.) For each claim, the calculated daily interest rate is stated as 0.02466% (9% annual rate divided by 365 days per year). Based on those calculations, the total prejudgment interest due from ALP Supply is $34,697.92 and from PV is $54,457.74. However, 2020 was a leap year containing 366 days, and therefore the daily prejudgment interest rate should be 0.02459%, or 9% annual rate divided by 366 days. The Court is unable to determine from these exhibits whether the calculations account for the additional day in the leap year. Accordingly, the Court respectfully recommends that GEICO's request for prejudgment interest should be granted pending revised calculations.[6]

## VII. DECLARATORY JUDGMENT

Finally, GEICO requests that the Court declare ALP and PV ineligible for payment on all the previously submitted and unpaid bills submitted to GEICO (the "pending claims"). (Pls.' Mem., ECF No. 21-1 at 17.) Pursuant to the Declaratory Judgment Act ("DJA"), "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the

---

[6] In the alternative, if additional calculations based on the daily interest rate are deemed unnecessary, the Court recommends acceptance of the totals set forth in the first Nash Declaration, which correctly calculates interest at a quarterly rate starting the first day of the first quarter following GEICO's payment—*i.e.*, $30,571.36 due from ALP and Vakula, and $46,566.08 due from PV and Vakula. (*See* Nash Decl., ECF No. 21-2 at ¶¶ 13–18.) These totals are consistent with the proposed judgment. (Proposed Judgmt, ECF No. 21-3 at 1–2.)

17

filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). An "actual controversy" refers to "the same type of 'cases' and 'controversies' embodied in Article III of the Constitution." *Armengol*, 2023 WL 2396099, at *2 (citing *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)). An actual controversy" within the meaning of the DJA "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023).

Here, "Plaintiffs have established that an actual controversy exists and that a declaratory judgment would afford specific and conclusive relief as to pending claims" with respect to all Defendants. *Spectrum Neurology*, 2016 WL 111395017, at *5. GEICO alleges that ALP and PV have pending bills submitted to GEICO that GEICO has no obligation to pay. (Compl., ECF No. 1 ¶¶ 337–44.) Additionally, GEICO has submitted documentation of pending collections actions that ALP and PV are actively prosecuting against GEICO in New York state courts. (Supp. Nash Decl., ECF No. 26 ¶¶ 9–12; Supp. Nash. Decl. Ex. 4, ECF No. 26-4.) GEICO has provided a list of the actions, including the amounts involved, the claim numbers, and the status of each action. (Supp. Nash Decl. Ex. 4, ECF No. 26-4 at 2). "Courts in this district routinely grant declaratory relief in similar circumstances, where fraudulently incorporated medical practices have fraudulent claims pending against insurers for No-Fault benefits." *Elmwood*, 2022 WL 772737, at *13 (citing cases); *cf. Armengol*, 2022 WL 432320, at *11 (denying GEICO's request for declaratory judgment in part because GEICO had not provided lists of cases naming the collection actions, where the cases were pending, who the parties were, the amounts involved). Therefore, the Court respectfully recommends that a

18

declaratory judgment should be entered that GEICO is not legally obligated to pay any pending claims submitted by ALP and PV.

## VIII.  <u>CONCLUSION</u>

In sum, Plaintiffs have established liability on their common law fraud claims only. Accordingly, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 21, supplemented at ECF No. 26, should be **granted** as to their common law fraud claims and **denied** as to their unjust enrichment claims. The Court further respectfully recommends that:  (1) a default judgment should be entered against Defendants for common law fraud; (2) Plaintiffs should be awarded compensatory damages in the amounts of (a) $112,201.74 jointly and severally against ALP Supply, Inc. and Vakula and (b) $188,799.94 jointly and severally against PV Supply, Inc. and Vakula, with prejudgment interest to accrue at an annual rate of nine percent until entry of judgment, with revised calculations to be provided to the Court to determine the specific amount due; and (3) a declaratory judgment should be entered that Plaintiffs have no obligation to pay any pending claims submitted by ALP Supply, Inc. and PV Supply, Inc.

A copy of this Report and Recommendation is being served on GEICO via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendants at the following addresses forthwith: (1) ALP Supply, Inc., 2851 Cropsey Ave., Ste. 104, Brooklyn, New York 11214; (2) PV Supply, Inc., 2220 65th St., Ste. 159, Brooklyn, New York 11204; (3) Pal Vakula, 2612 West St., Apt. 1C, Brooklyn, New York 11223; and (4) Pal Vakula, 710 Avenue S, Apt. B6, Brooklyn, NY 11223.  Plaintiffs shall serve a copy of

this Report and Recommendation on Denis Korsunskiy, Esq. via email on or before **September 12, 2023**.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 11, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge